By the Court.—Mouele, Oh.
If this case presented the single question, whether a broker can act on behalf of both seller and purchaser of merchandise, so as to make a valid contract binding upon both, where the dual agency was unknown to one at least of the parties, and there was no subsequent recognition or ratification of the act, the verdict probably could not be upheld.
The general rule is, that, except for some purposes (i. e., signing a contract within the statute of frauds), a broker is forbidden to act for both parties, concealing his agency for one from the other. But the rule is confined to cases where the mutual agency is concealed. Under such circumstances, it is deemed to be incompatible with the duties of a broker to act for both. In the interest of the seller he would be bound to get the highest and best price; and in the interest of the buyer, to obtain the lowest price.
But, as has been said, the rule is restricted to cases of'concealment or fraud.
I had occasion to collect and review the cases on this subject, quite recently, in Rowe v. Stevens, decided at the January term, 1873, 35 Supr. Ct. Rep. 139, which has since been affirmed by the court of appeals, and it is not necessary to repeat them here.
The deduction from the cases is, that- if there is no concealment or fraud, and the parties are made aware that the broker is acting for both buyer and seller, the act is not incompatible with the broker’s duty.
If, therefore, the defendant, knowing of Saunders’ *100 authority to act for the plaintiffs, recognized and adopted the purchase, which had been made for him, by the same agent, such purchase was binding on the defendant
The uncontradicted evidence established that the broker was acting on behalf of the plaintiff. The bought and sold notes contained that statement. It was communicated to the defendant, by the delivery of the sold note to him ; and he afterwards, by letter and in conversation, admitted the purchase, and with such knowledge of the broker’s agency of the plaintiffs, ratified the act as that of his, the'defendants’ agent, in making the purchase.
He made no objection to the purchase on the ground of any want of authority on the part of the broker to bind him, but repudiated the sale for other and different reasons.
Under these circumstances, the purchase or the contract of purchase, was binding upon the defendant; and the motion to dismiss the complaint was properly denied.
The objection that the contract was void under the statute of frauds, set up in the defendant’s answer, was not taken at the trial, and, if it was important to consider it, it is too late to raise the question now.
But Saunders had sufficient authority to bind the defendant; and his signing the contract as the defendant’ s broker, took it out of the operation of the statute. To save a contract from the statute a broker may be the agent and may sign for both parties (Allan v. Aguira, 5 N. Y. Leg. Obs. 380; Dilworth v. Bostwick, 1 Sweeny, 581).
Another objection taken at the trial, was, that this court has not jurisdiction of the person of the defendant.
The summons had been served in the city of Buffalo, and it was claimed that a summons to commence an *101 action in this court could not be served out of the city and county of New York.
The act of 1828, organizing this court (§ 5), gave it power to hear, try and determine all local actions arising within the city and county of New York, and all transitory actions, although the same may not have arisen therein ; and the only restriction to its jurisdiction over such actions, was, that it should have no power to send any process into any other county, except writs of subpoena, and attachments to enforce their obedience.
The act conferred no equity jurisdiction whatever; it ha d merely common law powers.
By section 33 of the Code, equity powers were conferred on the court (Forrest v. Forrest, 25 N. Y. 501) ; and its common law; jurisdiction extended to all actions, where all the defendants resided or were served in this city. In 1852, it was' further extended to cases where one or more of several defendants, jointly liable on contract, resided or were served therein. Under that amendment this court held, that in actions of joint liability upon contract, if one of the defendants resided in this city the summons might be served in any other place (Porter v. Lord, 13 How. Pr. 254). And in actions enumerated in sections 123 and 124, this court was given co-equal jurisdiction with the supreme court, and the summons may be served in any part of the State (Kerr v. Mount, 28 N. Y. 659). In that case Judge Dentó says (p. 664), in the actions enumerated in these sections the superior court has jurisdiction without regard to the defendant's residence. And hence it has not, I believe, been doubted, that in these actions, not only may the process of this court be served in any county in the State, but it may be served by publication, or any of the other modes of substituted service (see also, Varian v. Stevens, 2 Duer, 635.)
In giving a construction of the several acts regulat *102 ing the jurisdiction of the court, we determined in a recent case (Van Pelt v. United States Metallic Spring Co., 13 Abb. Pr. N. S. 325), that under these statutes, this court, except in respect to the person of the defendant, had co-equal jurisdiction with the supreme court, in all cases, where an “ action ” could be maintained in either court.
Such was the jurisdiction of the superior court, when article 6 of the constitution was agreed to in convention, and adopted by the people. The court was u continued^ with the powers and jurisdiction it then had, “ and such further civil and criminal jurisdiction as might be conferred bylaw.”
.Under the power thus granted, the act of April, 1873, was passed, giving to this court, ^original jurisdiction, at law and in equity, concurrent and co-extensive with the supreme court, of all civil actions.”
In Landers v. Staten Island R. R. Co. (14 Abb. Pr. N. S. 346), the court of appeals has held, that an act passed in 1871 (Sess. Laws 1871, p. 555), extending the territorial jurisdiction of the city court of Brooklyn, was unauthorized by the constitution, and in deciding that case, they have incidentally held that the act of 1873 was open to the same objection.
The argument of the court of appeals, is, that these city courts having been created local courts, were merely continued as such by the judiciary article, and could not have power given to them, to send their process into eve'ry part of the State.
That the superior court was created a local court, with limited territorial jurisdiction, is not denied. But the legislature which created it, has assumed from time to time to exercise, and has exercised, the power of adding- to and enlarging its jurisdiction in respect and to the extent enumerated in- sections 33, 123, and 124, of the Code, and has authorized the court, in the enumerated actions, to send its process into any *103 county in the State, and, as construed in Kerr v. Mount (supra), without regard to the defendants' residence.
It is to be presumed that the framers of the judiciary article understood the nature and extent of the then existing jurisdiction of the courts ; and that the power of the legislature over them had not been deemed inflexible. There had been added to them equity powers, and they had brought within their common law jurisdiction, a large class of cases and persons, other than such as were embraced within the original statutes.
The legislature having exercised these powers when those courts remained legislative courts, the intention of the makers of the judiciary article may reasonably have been, to leave subsequent legislation as untrammeled as it had theretofore been ; and when they gave the power to add such “further" jurisdiction, they intended to authorize some other jurisdiction than such as it already possessed, which was then, except in the person of the defendant in some actions, co-extensive with the jurisdiction of the supreme court.
Indeed, except in enlarging its territorial jurisdiction, in the exceptional actions, it is difficult to see, what “further" jurisdiction can be given to it. It already had jurisdiction over both local and transitory actions, and over all equity proceedings, with a limitation as to residence or service in the city only as to such actions as were not embraced in sections. 123 and 124 of the Code.
The court, however, in the Landers case has, by its decision, limited the term “jurisdiction" to the object, and denied its application to territory or persons of suitors ; and, therefore, that “further civil jurisdiction,” has respect to the subject matter and cause of action only. This may be so, but much of the previous legislation would seem to indicate, that jurisdiction over the person, and the cases in which it could be acquired, and the mode of acquiring it, entered largely *104 into the views of the legislature. The argumentum ab inconvenienti, of “hauling men and women, from distant parts of the State, who had never been within the limits of the city, within its power, and subjecting them to its jurisdiction,” can have but little force in view of the same result ensuing, if the action was in the supreme court, with the same city designated as the place of trial.
Nevertheless, the Landers case is authoritative upon this court, and following it, we must hold that the summons in this case was not so served as to give this court jurisdiction over the person of the defendant, and unless the objection has been waived, it must be held to have been well taken.
The defendant appeared generally, and answered without alleging want of jurisdiction as a defense.
A voluntary appearance of a defendant was long since held to be equivalent to a personal service of the summons (Mahaney v. Penman, 1 Abb. Pr. 34), And section 139 of the Code, as amended in 1857, was probably suggested by the decision of the court of appeals in Burcle v. Eckhardt (3 N. Y. 132), that there could be no waiver.
In the recent case of McCormick v. Penn. Cent. R. R. Co. (49 N. Y. 303), it was held, that where the court has jurisdiction of the cause of action, consent may confer jurisdiction of the person ; and that such consent may be expressed by (a foreign corporation in that case) appearing by attorney, and answering generally in the action. See also, Sullivan v. Frazee, 4 Robt. 616.
In the Landers case, the objection was distinctly taken by answer, and the court say it was not waived.
The exceptions should be overruled, and judgment ordered for the plaintiffs upon the verdict.
Freed max, J., concurred.